### H. A. McLAURIN v. T. F. WILLIAMS.

(Filed 3 April, 1918.)

**1. Landlord and Tenant—Leases—Fraud—Title.**

Where the plaintiff has been in possession of the lands in dispute for twenty-three years and continues therein, and has executed a lease thereof to the defendant, it may be shown in evidence that the defendant induced the lease by fraud and misrepresentation, and upon establishing this as a fact, the relation of landlord and tenant is unavailable as a defense.

**2. Same—Evidence—Questions for Jury—Trials.**

Evidence that the defendant has induced the plaintiff, an ignorant colored man, to accept a lease of his own land upon defendant's representation that it was necessary to get a paper title to the lands after it had been sold for taxes, is sufficient upon the question of defendant's fraud and misrepresentation to take the issue to the jury.

**3. Instructions—Contentions—Tax Deeds—Deeds and Conveyances—Appeal and Error.**

Where the plaintiff has permitted the lands in controversy to be sold for taxes, and the defendant claims under the tax deed, it is not error for the court to forbid the defendant's counsel to argue to the jury that neither the plaintiff nor his ancestor had paid anything for the land.

**4. Instructions — Contentions — Appeal and Error — Objections and Exceptions.**

A statement by the court of the contention of a party properly arising in the controversy is not error ·and will not be considered on appeal when not excepted to at the time.

**5. Instructions—Colored Persons—Fair Trials—Appeal and Error.**

A charge to the jury, where one of the parties is a white and the other a colored man, that they should give the litigants a fair and impartial trial regardless of color is not erroneous.

**6. Tax Deeds—Deeds and Conveyances — Liens — Instructions—Appeal and Error.**

Where the controversy over lands depends upon the validity of defendant's tax deed, it is not error for the court to charge the jury that if plaintiff recovered in the action he would have to repay the defendant the moneys he has expended; and where the verdict is in plaintiff's favor, a judgment is proper making the amount a lien upon the lands.

APPEAL by defendant from *Bond, J.,* at September Term, 1917, of CUMBERLAND.

*Cook & Cook and J. M. Williford for plaintiff.*
*Bullard & Stringfield for defendant.*

CLARK, C. J. The complaint alleges that the plaintiff is the owner of the tract of land described, containing 148 acres, and has been in the peaceable, quiet and adverse possession of said land, claiming it as his own, for more than twenty-three years, exercising all the rights of ownership, but that the defendant has trespassed upon said land, interfering with his farming thereon, and has threatened the plaintiff to put him on the county roads, and otherwise sought to intimidate the plaintiff, who is an ignorant colored man; and being fearful to proceed with the cultivation of said land, he brought this action to restrain the defendant from interfering with the possession of the land and asked a restraining order. The defendant answered that the plaintiff had rented the land in 1916 from him and was estopped to deny defendant's title.

The plaintiff in his reply averred that the defendant bought the land at a sale for taxes due by the plaintiff for the year 1914; that at such sale by the sheriff on 3 May, 1915, the defendant bought the land and in January, 1916, notified the plaintiff that he would ask a deed from the sheriff on 3 May, 1916; that the defendant had bought the land at the tax sale for $14.55 taxes, but that the land is worth at least $1,000. The complaint alleged, and the plaintiff testified, that when this notice was given he told the defendant that he would get the money and pay defendant, but that the defendant told him he need not do that, that he wanted to help him get a paper title for the land, and to wait till after 3 May, 1916, when he (defendant) would get a sheriff's deed for it, and that thereafter the defendant told the plaintiff that it was necessary for him to sign a lease in order to help him strengthen his chances to get a good title. It is alleged and in evidence that plaintiff, relying upon these representations of the defendant, did not get the money to pay the taxes before 3 May, 1916, and signed the lease in August of that year, as the defendant had told him it was necessary to do so in order to perfect his title.

There was evidence to the contrary from the defendant, but the jury found, in response to the issues, that the defendant agreed to get the title from the sheriff for the land in order to make the plaintiff's title good, and Williams had expended altogether in getting deed for the land from the sheriff $63.50, to which the defendant is entitled to add any taxes paid since that time, and that the plaintiff executed the lease to the defendant on the understanding with him that it was made in order to use to make McLaurin's title good.

The court properly refused to grant the motion to dismiss. If, as the jury find, the lease was secured by the defendant for the purpose of perpetrating a fraud on the defendant, the plaintiff could have the same declared void without surrendering possession, and besides, the plaintiff, according to the evidence, has never been out of possession. A lease obtained by fraud and misrepresentation, as found by the jury, did not create the relation of landlord and tenant, and there was no agreement, according to these findings, for an option.

While the counsel for the defendant was addressing the jury, urging that the grandfather of the plaintiff had never paid for the land, and that the plaintiff did not have a good title for it, the court interrupted the counsel by saying that he could not permit that argument as the defendant was claiming under a tax deed, the land having been sold for the plaintiff's taxes. We do not see any error in this, nor in the court refusing to permit the case to turn upon the question whether the plaintiff's ancestor had paid for the land. There was neither allegation nor issue presenting such proposition. It was in evidence that the plaintiff had been in uninterrupted possession 23 years. Nor was there any error in stating the contentions of the plaintiff that the defendant had misled him in order to prevent his redeeming the land and that the plaintiff contended that the land—148 acres—was worth $1,000 to $1,400, and that he would not have let the defendant get the tax title if he had not been misled by the defendant's promises to buy the land for his benefit at the sheriff's sale. This was merely a statement of the plaintiff's contention in the complaint and in the argument and, besides, was not excepted to at the time.

Neither was there any error in the judge charging the jury that in a trial where one party is white and the other is colored the jury should be fair and just and give them a fair and impartial hearing, regardless of the color of the litigants. Nor was there any error in the court instructing the jury that if the plaintiff recovered the land he would have to pay Williams the taxes, costs, and interest as provided by law.

The result of the trial depended almost exclusively upon the controverted issues of fact as presented by the pleadings and submitted to the jury. The verdict as to the second issue was set aside, and at the next

term of the court it was found by the jury that the amount due the defendant for taxes and the interest allowed by law and cost attendant amounted to $39.84, for which sum judgment was rendered in favor of the defendant and the same declared to be a lien upon the land, but that subject to such lien, the defendant held the naked legal title to the lands in trust for the plaintiff, to whom he should convey in fee simple all interest and title therein upon payment of the aforesaid lien, and the defendant was perpetually enjoined from trespassing upon said land or in any way interfering with the possession thereof by the plaintiff. And judgment was rendered in favor of the plaintiff for the costs of the action.